NO. 07-11-0151-CV

 IN THE COURT OF APPEALS

 FOR THE SEVENTH DISTRICT OF TEXAS

 AT AMARILLO

 PANEL B

 SEPTEMBER 18, 2012

 _____________________________

 EDNA SCHMIEDING and WILLIAM SCHMIEDING,

 Appellants
 v.

 MISSION PETROLEUM CARRIERS, INC.,

 Appellee
 _____________________________

 FROM THE 274TH DISTRICT COURT OF COMAL COUNTY;

 NO. C2008-1013C; HONORABLE DIBRELL WALDRIP, PRESIDING
 _____________________________

 Memorandum Opinion
 _____________________________

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
 Edna Schmieding and William Schmieding (the Schmiedings) appeal from a judgment denying them
recovery from Mission Petroleum Carriers, Inc. (Mission). They had sued Mission for injuries
arising from an automobile collision with a Mission employee. When asked to determine culpability,
the jury found that the employee was not negligent but that Mission was. However, the trial court
entered judgment on behalf of Mission upon concluding that it could not be negligent if its employee
was not negligent. The Schmiedings appealed the judgment via seven issues. We affirm.
 Issue One – Negligent Retention
 We are first told that the trial court erred because it refused to uphold the verdict on the
basis that Mission negligently hired, supervised or retained the employee involved in the accident.
Mission argues that the trial court had no option but to absolve it from liability given the finding
that its employee was not negligent. Mission is correct, and we overrule the issue.
 Before Mission could be found liable for negligently hiring, retaining, or supervising its
employee, the employee must first engage in actionable misconduct. See Wansey v. Hole, No. 11-0348,
2012 Tex. Lexis 559 (Tex. June 29, 2012) (stating that: “Though we have never expressly set out
what duty an employer has in hiring employees, or said that a negligent hiring claim requires more
than just negligent hiring practices, there is a broad consensus among Texas courts that such a
claim requires that the plaintiff suffer some damages from the foreseeable misconduct of an employee
hired pursuant to the defendant's negligent practices”); Brown v. Swett & Crawford of Tex., Inc.,
178 S.W.3d 373, 384 (Tex. App.–Houston [1st Dist.] 2005, no pet.) (stating that to prevail on a
claim for negligent hiring or supervision, the plaintiff is required to establish not only that the
employer was negligent in hiring or supervising the employee, but also that the employee committed
an actionable tort against the plaintiff); Gonzales v. Willis, 995 S.W.2d 729, 739 (Tex. App.–San
Antonio 1999, no pet.), overruled in part on other grounds in Hoffmann-La Roche Inc. v. Zeltwanger,
144 S.W.3d 438, 447-48 (Tex. 2004) (stating that an employer cannot be held liable for negligently
hiring an employee unless the employee committed an actionable tort); Mackey v. U.P. Enters., Inc.,
935 S.W.2d 446, 459 (Tex. App.–Tyler 1996, no writ) (stating that an employer has a duty to
adequately hire, train, and supervise employees and the negligent performance of those duties may
impose liability on an employer if the complainant’s injuries are the result of the employer’s
failure to take reasonable precautions to protect the complainant from misconduct of its employees);
see also TXI Transp. Co. v. Hughes, 306 S.W.3d 230, 240 (Tex. 2010) (concluding that negligent
hiring should have a similar requirement to negligent entrustment cases, which require that the
employee's negligent conduct harm the plaintiff).
 Issue Two – Negligence Per Se
 Next, the Schmiedings contend that the trial court erred in failing to instruct the jury that
the employee’s conduct was negligence per se. Mission argues that the motor vehicle statute relied
upon by its opponent, i.e. Tex. Transp. Code Ann. § 545.151(a) (West 2011), involves obeying traffic
control signals at an “intersection,” and since the collision did not occur at such a location, it
could not provide the foundation for negligence per se. We agree with Mission and overrule the
issue.
 Per § 545.151, “[a]n operator approaching an intersection (1) shall stop, yield, and grant
immediate use of the intersection: (A) in obedience to an official traffic-control device, including
a stop sign or yield right-of-way sign.” Id. § 545.151(a) (emphasis added). Furthermore, an
“intersection” is defined as the “common area at the junction of two highways . . . .” Id. §
541.303(a) & (b). The collision at bar did not occur within the “common area at the junction of two
highways,” and the Schmiedings do not argue otherwise in their brief. Thus, the statute is
inapplicable to the situation at bar.
 Issue Three – Res Ipsa Loquitur
 The Schmiedings next argue that the trial court should have instructed the jury on res ipsa
loquitur. Mission contends that 1) the complaint was not preserved and 2) the theory did not apply
since res ipsa involves situations wherein the event or injury can only occur because someone was
negligent and auto accidents can occur even in the absence of negligence. We overrule the issue.

 The record discloses that at the time the trial court entertained objections to its charge,
none were made by the Schmiedings about the absence of an instruction on res ipsa loquitur. This
silence failed to comply with the directive that one must preserve charge error by “point[ing] out
distinctly the objectionable matter and the grounds of the objection.” Tex. R. Civ. P. 274; see
Carousel's Creamery, L.L.C. v. Marble Slab Creamery, Inc., 134 S.W.3d 385, 404 (Tex. App.–Houston
[1st Dist.] 2004, pet. dism'd) (stating that merely objecting does not satisfy Rule 274 unless “the
defect relied upon by the objecting party and the grounds of the objection are stated specifically
enough to support the conclusion that [the] trial court was fully cognizant of the ground of
complaint and deliberately chose to overrule it”). Since no objection was lodged by the
Schmiedings, then they failed to preserve error as mandated by Rule 274.
 Issue Four – Exclusion of Dr. Uribe’s Testimony
 Next, the Schmiedings contend the trial court erred by not allowing an expert witness, Dr.
Eduardo Uribe, to testify that Mission’s employee fell asleep while driving. In turn, Mission
posits that the trial court did not abuse its discretion by excluding the testimony since it failed
to exclude alternate theories of causation and the testimony was unreliable. We overrule the issue.

 The trial court conducted a hearing to assess Dr. Uribe’s qualifications and determine the
content of his testimony. Thereafter, it said:
 I think he can say -- he can exclude fainting or loss of consciousness because of leg injuries
 or loss of blood. He does go on to clarify that on page 19 as well. I don't think I'm going to
 --I'm not going to allow him to testify about saying that on this occasion he fell asleep. I'm
 not going to allow Dr. Uribe to testify that he steered his truck after he awakened from
 hitting a curb. I'm not going to allow him to testify one way or the other about a heart
 attack. In other words, I don't think he can testify
 that he can exclude heart attack.
and:
 This is what I said in regard to Uribe, that plaintiffs' expert Uribe
 would be allowed to opine that [the employee] did not faint or lose consciousness due to loss
 of blood or injury to the leg. And he's allowed to opine that [the employee] was sleep-
 deprived -- and basically that comes out of the records. He's allowed to opine that he suffered
 from chronic back pain, as well as other facts from the medical records. He's not allowed to
 opine that he actually fell asleep on the date and time in question. I don't understand how he
 could do that, but not allowed to opine that he excludes heart attack because one day he said
 it could have been and one day he said it couldn't have been.

 and:
 Then not allowed to opine that [the employee] was awakened after hitting the curb and then
 steered his vehicle before colliding. I don't understand that conclusion either, but -- but my
 point, though, is to what I've told you he can opine, if he looked at the same records -- if --
 if you want your expert to opine that he didn't faint based in part on the same records, why
 can their expert not make the same conclusion –

and:

 That's what his opinion was. I mean -- and I looked at the records or the report that you
 showed me yesterday. Precisely Dr. Uribe says on two different occasions -- one time he says he
 did not faint due -- or lose consciousness due to leg pain or injury to the leg. And then on
 another occasion he says due to loss of blood.

To such comments, counsel for the Schmiedings interspersed such utterances as: 1) “I'm good with all
of that,” 2) “Well, I wasn't quite sure about your ruling with Dr. Uribe …,” and 3) “. . . so his --
his -- his testimony is restricted to him saying that -- that he does have an opinion that -- that
he fainted because of -- of a leg injury? I don't know that he was going to say anything else
anyway, but forget it.” Then, the Schmiedings opted not to call the doctor.
 The foregoing evinces no objections to the trial court’s ruling. Rather, it can be
interpreted as illustrating that the Schmiedings were “good” with or accepted the decision. And, if
they had no objections to it below, they cannot complain about it on appeal.
 Next, and to the extent that the Schmiedings suggest that the expert’s opinion about the
employee falling asleep immediately before or during the collision was founded upon a reliable
premise, we must disagree. It may well be, as they allege, that the employee suffered from chronic
back pain and had a history of sleep difficulties. It may be that being unable to sleep at night
may cause one to fall asleep during the day. Yet, one cannot rationally deduce from the fact the
employee had a history of sleep difficulties that he was tired on the day of the accident or
immediately before or during the accident. Nor can one logically deduce that having problems
sleeping meant the employee must have fallen asleep immediately before or during the accident. So,
the trial court could well have found the expert’s opinion unfounded or unreliable.
 Issues Five, Six and Seven – Gross Negligence and Evidence of Damages
 Via their last three issues, the Schmiedings contend that the trial court should have
submitted an issue regarding whether Mission acted with gross negligence and should have admitted
various testimony regarding their damages. We overrule each contention.
 As for the matter of the gross negligence instruction, we reiterate that Mission’s employee
was absolved of negligence by the jury while Mission was absolved of negligence by the trial court.
Given those circumstances, and our inability to conclude that the trial court erred in so absolving
Mission, we are unable to see how an issue on gross negligence was appropriate. Simply put, if
Mission’s conduct did not constitute negligence, that same conduct can hardly constitute gross
negligence.
 As for the evidentiary matters concerning damages, we need not consider them. The issues are
irrelevant since Mission was not found to be liable for any misconduct upon which an award of
damages can be based.
 Accordingly, we affirm the judgment of the trial court.[1]

 Brian Quinn
 Chief Justice

-----------------------
 [1]Based on our disposition of the Schmiedings’ appeal, we need not address Mission’s cross
issues.